# EXHIBIT A

NO. _____

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

### In re E.J., S.P., J.S., K.T.
*on habeas corpus.*

## PETITION FOR WRIT OF HABEAS CORPUS

## MEMORANDUM OF POINTS AND AUTHORITIES

## IMMEDIATE ACTION REQUESTED BY OCTOBER 10, 2007

### ATTORNEYS FOR PETITIONERS

**PRISON LAW OFFICE**
DONALD SPECTER (SB No. 83925 )
VIBEKE NORGAARD MARTIN (SB No. 209499)
RACHEL FARBIARZ (SB No. 237896)
GENERAL DELIVERY
SAN QUENTIN, CA 94964
(415) 457-9144 FAX: (415) 457-9151

**ROSEN, BIEN & GALVAN, LLP**
ERNEST GALVAN (SB No. 196065)
NURA MAZNAVI (SB No. 232008)
LOREN STEWART (SB No. 243645)
315 MONTGOMERY STREET, 10TH FL.
SAN FRANCISCO, CALIFORNIA 94104
(415)433-6830 FAX: (415)433-7104

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

PARTIES ............................................................................................................... 3

STATEMENT OF FACTS ....................................................................................... 4

CONTENTIONS ................................................................................................... 10

PRAYER FOR RELIEF ........................................................................................ 11

VERIFICATION ................................................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PETITION..................................................................................... 14

ARGUMENT........................................................................................................ 16

I.      EMERGENCY TEMPORARY RELIEF IS
        REQUIRED TO MAINTAIN THE STATUS
        QUO AND PREVENT IRREPARABLE
        INJURY ................................................................................................... 16

        A.    Petitioners Have Demonstrated a Strong
              Likelihood of Success on the Merits ..................................... 18

        B.    Petitioners and Those Similarly Situated
              Are Certain to Suffer Irreparable Harm ............................... 18

        C.    The Balance of Harms Favors an
              Injunction Because the State's Action
              Will Harm Public Safety and Disrupt
              Communities by Forcing Petitioners and
              Those Similarly Situated into
              Homelessness ........................................................................ 19

II.     THE RESIDENCY RESTRICTION IS
        INVALID AS IT IS AN UNREASONABLE
        PAROLE CONDITION ............................................................................ 20

        A.    The Residency Restriction
              Impermissibly Impinges On
              Constitutionally Protected Rights. ........................................ 22

i

1.   The Residency Restriction
Impinges On Petitioner's
Fundamental Interests In Residing
In Their Homes And Living With
Their Families . ...........................................................22

2.   The Residency Restriction Is
Overbroad................................................................26

B.   Even If The Restriction Were Not
Subject To A Strict Scrutiny Review, It
Is Invalid because It Is Not reasonably
Related To The Offense Or The Offender
.................................................................................30

1.   The Conditions Have No
Relationship To Petitioners' Prior
Offenses...................................................................30

2.   The Requisite Connection
Between The Conditions And The
Prevention Of Future Criminal
Acts Is Also Absent ...............................................31

III.   THE PROPOSITION 83 RESIDENCY
RESTRICTION VIOLATES SECTION 3 OF
THE CALIFORNIA PENAL CODE WHICH
PROHIBITS RETROACTIVITY OF PENAL
STATUTES ........................................................................35

IV.   THE IMPOSITION OF THE RESIDENCY
REQUIREMENTS ON PERSONS
RELEASED FROM NON-SEX OFFENSE
TERMS IS NOT AUTHORIZED BY
PROPOSITION 83 .............................................................36

V.   THE PROPOSITION 83 RESIDENCY
RESTRICTION VIOLATES THE EX POST
FACTO CLAUSE AS APPLIED TO
PERSONS WHO COMMITTED SEX
OFFENSES BEFORE THE NOVEMBER 8,
2006 EFFECTIVE DATE .................................................38

A.   The Purpose of the 2,000-foot
Restriction Is Punishment..........................................39

B.   The Effect of the 2,000-foot Restriction
Is Punitive...................................................................40

ii

C.    Enforcement Through A Parole
      Condition Does Not Cure The Ex Post
      Facto Violation ................................................................. 41

VI.   THE RESIDENCY RESTRICTIONS OF
      PROPOSITION 83 ARE IMPERMISSIBLY
      VAGUE AND VIOLATE PETITIONERS'
      FUNDAMENTAL RIGHT TO DUE
      PROCESS................................................................................ 43

VII.  PETITIONERS' FAILURE TO EXHAUST
      ADMINISTRATIVE REMEDIES IS NOT
      REQUIRED SINCE REMEDIES ARE
      INADEQUATE AND FUTILE ........................................... 46

CONCLUSION ............................................................................... 47

# TABLE OF AUTHORITIES

**Page**

### State Cases

*Arrieta v. Mahon*
(1982) 31 Cal.3d 381 .................................................................. 24, 25

*City of Santa Barbara v. Adamson*
(1980) 27 Cal.3d 123 .................................................................. 23

*Davis v. City of Berkeley*
(1990) 51 Cal.3d 227 .................................................................. 39

*Faucette v. Dunbar*
(1967) 253 Cal.App.2d 338 ........................................................ 17

*In ex parte Scarborough*
(1946) 76 Cal.App.2d 648 .......................................................... 25

*In re Alclala*
(1990) 222 Cal.App.3d 345 ........................................................ 17

*In re Babak*
(1993) 18 Cal.App.4th 1077 ....................................................... 21

*In re Bushman*
(1970) 1 Cal.3d 767 ................................................................... 21

*In re Chavez*
(2004) 114 Cal.App.4th 989 ....................................................... 35

*In re Crow*
(1971) 4 Cal.3d 613 ................................................................... 17

*In re Dexter*
(1979) 25 Cal.3d 921 ................................................................. 46

*In re Head*
(1986) 42 Cal.3d 223 ................................................................. 17

*In re Henderson*
(1964) 61 Cal.2d 541 ................................................................. 17

iv

*In re Muszalski*
    (1975) 52 Cal.App.3d 500 ........................................................................ 46

*In re Reina*
    (1985) 171 Cal.App.3d 638 ...................................................................... 46

*In re Serna*
    (1978) 76 Cal. App.3d 1010 ...................................................................... 46

*In re Stevens*
    (2004) 119 Cal. App. 4th 1228 ........................................................... 20, 21

*In re White*
    (1979) 97 Cal. App. 3d 141 ............................................................... 21, 30

*Legislature v. Eu*
    (1991) 54 Cal.3d 492 ............................................................................... 14

*Mendoza v. Small Claims Court of Los Angeles*
    (1958) 49 Cal.2d 668 .......................................................................... 24, 25

*Park Redlands Covenant Control Committee v. Simon*
    (1986) 181 Cal.App.3d 87 ........................................................................ 23

*People v. Bauer*
    (1989) 211 Cal. App. 3d 937 ......................................................... 20, 25, 30

*People v. Beach*
    (1983) 147 Cal.App.3d 612 ........................................................... 25, 31, 32

*People v. Blakeman*
    (1959) 170 Cal.App.2d 596 ...................................................................... 26

*People v. Burden,*
    (1988) 205 Cal. App. 3d 1277 ....................................................... 31, 32, 38

*People v. Callejas*
    (2000) 85 Cal.App.4th 667 .................................................................. 41, 42

*People v. Dominguez*
    (1967) 256 Cal.App.2d 623 ........................................................... 20, 30, 31

*People v. Fritchey*
    (1992) 2 Cal. App. 4th 829 ................................................................. 31, 32

*People v. Grant*
    (1999) 20 Cal.4th 150 .............................................................................. 36

*People v. Johnson*
    (1995) 33 Cal.App.4th 623 ...................................................................... 37

*People v. Kiddoo,*
  225 Cal.App.3d 922 (1990) .................................................................21, 30

*People v. Lent,*
  (1975) 15 Cal.3d 481 ......................................................20, 30, 31

*People v. Pointer*
  (1984) 151 Cal.App.3d 1128 ...........................................................21

*Raven v. Deukmejian*
  (1990) 52 Cal.3d 336 ......................................................................14

*Robbins v. Superior Court*
  (1985) 38 Cal.3d 199 ......................................................................23

*Schmidt v. Superior Court*
  (1989) 48 Cal.3d 370 ......................................................................24

*Tapia v. Superior Court*
  (1991) 53 Cal.3d 282 ......................................................................36

*Tom v. City and County of San Francisco*
  (2004) 120 Cal.App.4th 674 ..........................................................23

*White v. Davis*
  (1975) 13 Cal.3d 757 ......................................................................23

## Federal Cases

*Beazell v. Ohio*
  (1925) 269 U.S. 167 .......................................................................38

*Cleveland Bd. of Educ. v. LaFleur*
  (1974) 414 U.S. 632 .......................................................................22

*Collins v. Youngblood*
  (1990) 497 U.S. 37 .........................................................................38

*Grayned v. City of Rockford*
  (1972) 408 U.S. 104 .......................................................................44

*Greene v. Lindsey*
  (1982) 456 U.S. 444 .......................................................................24

*Griswald v. Connecticut*
  (1965) 381 U.S. 479 .......................................................................23

*Johnson v. United States*
  (2000) 529 U.S. 694 ..................................................................39, 42

vi

*Kennedy v. Mendoza-Martinez*
(1963) 372 U.S. 144 .................................................................... 40, 41, 43

*Kolender v. Lawson*
(1983) 461 U.S. 352 .................................................................... 43, 44, 45

*Lanzetta v. State of New Jersey*
(1939) 306 U.S. 451 ............................................................................ 43

*Mathews v. Eldridge*
(1976) 424 U.S. 319 ........................................................................ 24, 25

*Meyer v. Nebraska,*
(1923) 262 U.S. 390 ........................................................................ 23, 31

*Moore v. City of East Cleveland*
(1977) 431 U.S. 494 ........................................................................ 22, 23

*Smith v. Doe*
(2002) 538 U.S. 84 ............................................................................. 39

*United States v. Jackson*
(9th Cir. 1999) 189 F.3d 820 ................................................................ 41

*Washington v. Glucksberg*
(1997) 521 U.S. 702 ............................................................................ 22

*Weaver v. Graham*
(1981) 450 U.S. 24 .............................................................................. 39

## Constitutional Provisions

Cal. Const. Art. 1, section 1 .................................................................. 24

Cal. Const. Art. 1, section 7 .................................................................. 24

Cal. Const. Art. I, § 1 ......................................................................... 23

Cal. Const. Art. VI, § 10 ...................................................................... 14

## Statutes & Regulations

Ark. Code Ann. § 5-14-128(a) .......................................................... 27, 28

Cal. Code Regs., Title 15 Section 3084.7, subdivision (g) ..................... 46

Cal. Penal Code § section 3 ................................................................. 36

Cal. Penal Code § 19.4 .................................................................................. 38

Cal. Penal Code § 647 subd. (j) ............................................................... 29, 33

Cal. Penal Code § 1484 ............................................................................... 17

Cal. Penal Code § 1203.1, subd. (j) ............................................................ 20

Cal. Penal Code § 3003.5, subdivision (b) ........................................... passim

Fla. Stat. Ann. § 947.1405(7)(a)(2) ........................................................... 28

Ga. Code Ann. § 42-1-15 ............................................................................ 28

Ga. Code Ann. §§ 42-1- 15, 42-1-12 (g)(2)(B) ......................................... 28

Ill. Comp. Stat. § 5/11-9.3 (b-5) ................................................................ 28

Ind. Code § 35-38-2-2.2 .............................................................................. 28

Iowa Code  § 692A.2A(1) ........................................................................... 28

Iowa Code § 692A.2A(4)(d) ................................................................. 28, 29

Ky. Rev. Stat. § 17.545(5) .......................................................................... 28

San Diego Mun. Code, Chapter 6, Art. 3, Div. 1,
    section 63.0102(b)(12) ...................................................................... 33, 35

Tex. Crim. Proc. Code Ann. § 42:12, Sec. 13B(a) .................................... 28

## Other Authorities

2 Witkin, Cal. Proc. 4th (1997) Courts, § 334, p.403 ......................... 14, 18

6 B.E. Witkin, Cal. Crim. Law, Crim. Writs,
    §§ 78-79 (3d ed. 2000) .......................................................................... 17

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

---

**In re E.J., S.P., J.S., K.T.**
*on habeas corpus.*

---

## PETITION FOR WRIT OF HABEAS CORPUS

## MEMORANDUM OF POINTS AND AUTHORITIES

### IMMEDIATE ACTION REQUESTED
### BY OCTOBER 10, 2007

---

## INTRODUCTION

1.      By this action, Petitioners seek immediate relief from Respondent's policy enforcing a draconian provision of Proposition 83 (Sexual Predator Punishment and Control Act, hereafter "SPPCA") that will force Petitioners to make an unlawful and unconscionable choice between leaving their home or residence, becoming homeless or violating a newly added condition of parole that will result in their imprisonment for a parole violation. Petitioners seek an order temporarily and permanently enjoining Respondent from enforcing Penal Code section 3003.5 subdivision (b) through parole conditions.

2.      More than nine months after Proposition 83 became effective, Respondent suddenly began to enforce Penal Code section 3003.5 through a

special condition of parole. Under this new policy all parolees who are required to register pursuant to Penal Code section 290 will violate parole if they "reside within 2,000 feet of any public or private school, or park where children regularly gather." The practical effect of this parole condition is to prevent Petitioners and other such parolees from living in any residence or home, since virtually all residential areas of the counties in which they are required to live are within the 2,000 foot limit. Petitioners have been notified by parole authorities that if they violate this condition of parole after October 10, 2007, they will be arrested and their parole will be revoked.

3.      They join the Attorney General in asking this Court to resolve the serious legal issues raised by the implementation of this provision of the SPPCA. Petitioners submit that its application subjects them, inter alia, to an unreasonable parole condition, and the retroactive and ex post facto application of a penal law. Petitioners request that the Court immediately enjoin the enforcement of this parole condition, issue an order to show cause and decide the merits of this petition.

2

## PARTIES

4.      Petitioner E.J.[1] is a parolee currently residing in San Francisco County. If E.J. does not leave his home by October 15, 2007, he will immediately be arrested for a parole violation.

5.      Petitioner S.P. is a parolee currently residing in Santa Clara County. If S.P. does not leave his home by October 11, 2007, he will immediately be arrested for a parole violation.

6.      Petitioner K.T is a parolee currently residing in San Diego County. If K.T. does not leave his home by October 12, 2007, he will immediately be arrested for a parole violation.

7.      Petitioner J.S. is a parolee currently residing in San Diego County. He is currently homeless.

8.      Respondent James Tilton is the Secretary of the Department of Corrections and Rehabilitation. As the Secretary, Mr. Tilton is ultimately

---

[1] Petitioners filed this writ using their initials only, because as registered sex offenders, they are likely to experience retaliation as a result of this filing and the perception that they are challenging a law designed to protect children. The courts have recognized the right for parties to proceed by pseudonym to protect confidentiality and minimize the risk of retaliation they may face. (*M.B. v. Superior Court* (2002) 103 Cal.App.4th 1384, 1386 [using initials to identify priests accused of child molestation where the superior court sealed the records to protect petitioners' confidentiality]; see also *Does I through XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1062-1063 [holding "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity"].)

3

responsible for the operation of the Department, including the parole policies and
practices at issue here.

## STATEMENT OF FACTS

9.    The SPPCA was passed by a voter-backed initiative as Proposition
83 on November 7, 2006. Among other things, the law amended section 3003.5 of
the Penal Code to prohibit persons required to register as sex offenders in
California from residing within 2,000 feet of any public or private school, or park
where children gather and allows municipal jurisdictions to impose even harsher
restrictions. The purpose of the law was to protect children from registered sex
offenders. (Text of Proposed Laws, Prop. 83, section 2(e), Exh. A at 000007.)

10.    The California Department of Corrections and Rehabilitation,
Department of Adult Parole Operations ("DAPO") began enforcement of section
3003.5, subdivision (b), on August 17, 2007. (DAPO Policy No. 07-36, attached
here as Exhibit B.) Pursuant to DAPO's policy, distributed to parole units
statewide, the housing restrictions of section 3003.5, subdivision (b), apply to all
parolees required to register under section 290, released from custody on or after
November 8, 2006. (*Id.* at 1, Exh. B at 000019.) This includes initial releases
(whether or not the term was for the underlying sex offense), parole violators with
a new term, parolees released after having served a parole revocation term, and
parolees released from any other jurisdiction's custody. (*Ibid.*)

4

11.    On August 17, 2007, individual parole units were provided with a list of all registered sex offenders released to parole on or after November 8, 2006 who appeared to be out of compliance with the housing restrictions of section 3003.5, subdivision (b). (DAPO Policy No. 07-36 at 2, Exh. B at 000020.) Parole agents were instructed to make an official determination of compliance or non-compliance of each individual included on the list using a handheld Global Positioning System (GPS) device. (*Ibid.*) Parole agents were instructed to measure the 2,000 feet from the primary entrance of the parolee's residence to the exterior boundary of the prohibited facility or park. (*Id.* at 7, Exh. B at 000025.) Individual parolees and their counsel have been informed that this distance is to measured "as the crow flies" not by travel distance.

12.    All section 290 registrants, including Petitioners, who were found to be residing in non-compliant housing were informed that they were in violation of section 3003.5, subdivision (b) and served with a modified condition of parole. (DAPO Policy No. 07-36 at 5, Exh. B at 000023.) Petitioners and other non-compliant parolees were informed that they had 45 days to come into compliance with the statute. *Ibid.* Those individuals unable to find compliant housing within the allotted time are to be immediately placed into custody and referred to the Board of Parole Hearings for an adjudication of their parole violation. (*Id.* at 9, Exh. B at 000027.) Individuals who indicated to their agent their intent to become

transient are not to be arrested. (*Id.* at 6, Exh. B at 000024, 10, Exh. B at 00028, 5th bullet point.)

13.    The first of these 45-day notices was to expire on October 1, 2007. However, due to defective notice that did not state how the individual parolee was in violation of the housing restriction, DAPO has given parolees not in compliance an additional 10 business days to find compliant housing.

14.    Respondent has provided little to no assistance to individual parolees attempting to find compliant housing. Petitioners and other non-compliant parolees have not been informed of areas in their counties where compliant housing may be found. Individual parole units statewide are using different definitions as to what constitutes a "park where children regularly gather," so that in some communities parolees are forbidden from residing near the beach and/or commercial ballparks. DAPO will not grant out-of-county transfers to parolees who are unable to come into compliance with the housing restrictions. Parolees who are unable to find compliant housing must either be arrested or become homeless.

15.    Petitioners are four parolees, all subject to registration under Section 290. None of the Petitioners is currently on parole for the sex offense underlying their section 290 registration. Petitioners were all released from a parole violation term after the passage of the law. Petitioners were all informed on

6

or shortly after August 17, 2007 that their residence was not in compliance with the residency restrictions of section 3003.5, subdivision (b).

16.    Almost every residential neighborhood in the cities in which Petitioners live is off limits. The attached map illustrates the proposed "predator free zones" throughout the State of California. (Exh. E at 000059.) The Sections of the map that encompass San Diego, Los Angeles, and San Francisco are magnified and also attached hereto. (Exh. E at 000059.) It is readily apparent from a review of these maps that nearly *all* of the cities of San Diego, Los Angeles, and San Francisco are off limits.[2]

17.    Petitioner J.S. is on parole in San Diego County, for a non-sex offense for which he was released on parole in March of 2006. J.S. must register under section 290 because of an indecent exposure citation he received in 1985 for urinating under a railroad trestle. After informing J.S. that he was not in compliance with section 3003.5, subdivision (b), DAPO cut off J.S.'s cash assistance that helped him pay rent. J.S asked his agent for a parole transfer out of state, but was told that the process would not be completed before the date by

_____

[2]The only areas of San Diego county that are not excluded are those owned by the Federal, State, or County government (i.e., military bases, state prison land, county jails) or those areas which are uninhabitable because of dense forests, canyons, and mountains. (Exh. E at 000059.)

which he had to be in compliance. J.S. has become homeless to avoid being sent back to prison.

18.    Petitioner K.T. is on parole in San Diego County, for a non-sex offense for which he was released on parole in January of 2006. K.T. currently lives with his wife in a home they have owned and lived in since 1989. K.T. is the sole caretaker of his wife, who is permanently disabled. K.T. must register under section 290 because of a guilty plea in 1990 for a charge of rape against an adult woman. Since he was informed of his non-compliance with the housing restrictions of section 3003.5, subdivision (b), K.T. has been attempting, without success, to find compliant housing in his county. K.T. filed an emergency 602 administrative appeal contesting the new condition of parole and its application to him on or about September 17, 2007. This appeal was denied at the second level and has now been submitted at the third level.

19.    Petitioner S.P. is on parole in Santa Clara County, for a non-sex offense for which he was released in August of 2006. S.P. is required to register under section 290 because in 1998 he pled guilty to charges arising from sexual contact among teenagers at a party. S.P. was 16; the girl was 15. S.P. has never been in custody on a prison term or a parole revocation term since the SPPCA was enacted in November 2006. DAPO is enforcing the SPPCA against S.P. because he was held on parole revocation charges for two weeks in March 2007, due to a

8

traffic citation. Because the parole revocation charge was so minor, the Board of

Parole Hearings gave S.P. a choice between being released immediately if he

would accept a revocation term of "credit for time" served, or remaining in

custody pending his June 2007 court date on the traffic citation. Rather than wait

four months in jail, S.P. accepted the credit for time served offer, with no notice

that it would bring him under the SPPCA. S.P. was told in August 2007, that he is

subject to the housing restrictions of section 3003.5, subdivision (b), because of

the March 2007 time in custody pending a parole revocation hearing. Since S.P.

was informed by his parole agent that his residence was not in compliance, he and

his mother, with whom he currently resides, have been looking, unsuccessfully, for

new housing in Santa Clara County. S.P. asked his parole agent if he could

transfer his parole out of county, but was told that he would be arrested for being

out of compliance before the out-of-county transfer was granted.

20.    Petitioner E.J. is on parole in San Francisco County for a non-sex

offense for which he was released in 2003. E.J.'s parole agent told him that all of

San Francisco County, apart from a small area in an expensive area of the county

near the ballpark, was not in compliance with section 3003.5, subdivision (b). E.J.

requested an out-of-county parole transfer but was told that the state parole

division is not allowing San Francisco parolees to transfer their parole out of

9

county. E.J. is required to register under section 290 because of a 1985 conviction for rape against a woman in her late 20s when E.J. was 16 years old.

21.    DAPO's policy document, Exhibit B to this Petition, directs parole agents to enforce the 2,000 foot-limit with no individual discretion, based only on section 290 status and "as-the-crow flies" measurements with a GPS device. This blanket policy has been applied against more than 2,000 individuals around the state, with no individualized discretion. All such individuals are similarly situated to Petitioners with respect to this blanket policy.

22.    Petitioners have not exhausted administrative remedies because it would be futile to do so and because the administrative appeal process would not be provide relief prior to their arrest. (See Cal. Code Regs., Title 15, Section 3084.7 subdivision (g).)

## CONTENTIONS

I.    EMERGENCY TEMPORARY RELIEF IS REQUIRED TO MAINTAIN THE STATUS QUO AND PREVENT IRREPARABLE INJURY

II.    THE RESIDENCY RESTRICTION IS INVALID AS IT IS AN UNREASONABLE PAROLE CONDITION

III.    THE PROPOSITION 83 RESIDENCY RESTRICTION VIOLATES SECTION 3 OF THE CALIFORNIA PENAL CODE WHICH PROHIBITS RETROACTIVITY OF PENAL STATUTES

IV.    THE IMPOSITION OF THE RESIDENCY REQUIREMENTS ON PERSONS RELEASED FROM NON-SEX OFFENSE TERMS IS NOT AUTHORIZED BY PROPOSITION 83

V.    THE PROPOSITION 83 RESIDENCY RESTRICTION VIOLATES THE EX POST FACTO CLAUSE AS APPLIED TO PERSONS WHO COMMITTED SEX OFFENSES BEFORE THE NOVEMBER 8, 2006 EFFECTIVE DATE

10

VI.   THE RESIDENCY RESTRICTIONS OF PROPOSITION 83 ARE
      IMPERMISSIBLY VAGUE AND VIOLATE PETITIONERS'
      FUNDAMENTAL RIGHT TO DUE PROCESS

VII.  PETITIONERS' FAILURE TO EXHAUST ADMINISTRATIVE
      REMEDIES IS NOT REQUIRED SINCE REMEDIES ARE
      INADEQUATE AND FUTILE

### PRAYER FOR RELIEF

Petitioners are without remedy save by habeas corpus.  Wherefore,

Petitioners pray that this Court:

1. Issue an Order to Show Cause why relief should not be granted,

2. Temporarily and permanently enjoin Respondent from applying Penal

Code section 3003.5, subdivision (b), that imposes a condition of parole that

prohibits Petitioners and all other parolees who must register pursuant to Penal

Code section 290 from residing within 2,000 feet of any public or private school,

or park where children regularly gather,

3. Declare the rights of parties,

4. Award reasonable attorneys fees, and

11

5. Grant any and all other relief necessary to a just resolution of this case.

Dated: October 4, 2007                    Respectfully submitted,

                                          PRISON LAW OFFICE
                                          ROSEN, BIEN & GALVAN, LLP

                                          By: _____
                                              Donald Specter
                                              Vibeke Norgaard Martin
                                              Rachel Farbiarz
                                              Ernest Galvan
                                              Nura Maznavi
                                              Loren Stewart
                                              Attorneys for Petitioners

12

## VERIFICATION

I, Donald Specter, declare:

I am an attorney for Petitioners in this action. By reason of their parole to counties other than Marin, Petitioners are absent from the county in which I maintain my office. Pursuant to Code of Civil Procedure section 446, I therefore submit my verification in lieu of Petitioners' verification for this Petition for Writ of Habeas Corpus.

I have read the foregoing Petition for Writ of Habeas Corpus. I am informed and believe that the matters stated therein are true andon that ground allege that the matters stated therein are true, except where the matters are specifically stated upon my own knowledge.

I declare under penalty of perjury that the foregoing is true and correct and that this verification was executed on October 3, 2007 at San Rafael, California.


DONALD SPECTER

13

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PETITION

### THIS COURT SHOULD EXERCISE ITS ORIGINAL JURISDICTION BECAUSE THE VALIDITY OF THE RESIDENCY RESTRICTION IS OF GREAT PUBLIC IMPORTANCE, AND SHOULD BE RESOLVED IMMEDIATELY.

Where, as here, a matter involves issues of sufficient public importance which should be resolved promptly, it is appropriate that the Supreme Court exercise its original jurisdiction. (See e.g., *Legislature v. Eu* (1991) 54 Cal.3d 492 [Supreme Court exercised original jurisdiction over action by legislature challenging initiative as the case involved issues of significant public importance]; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 340 ["It is uniformly agreed that the issues are of great public importance and should be resolved promptly. Accordingly, under well settled principles, it is appropriate that we exercise our original jurisdiction."]; Cal. Const. Art. VI, § 10; 2 Witkin, Cal. Proc. 4th (1997) Courts, § 334, p. 403 [the Supreme Court has the same jurisdiction as the Courts of Appeal and superior courts in habeas proceedings].)

We agree with the Attorney General that the question of whom the SPPCA applies to is of "sufficient public importance to justify this Court's consideration." (Attorney General Edmund G. Brown's Informal response in In re Gerald C. Wade, Case No. S148544, ["Attorney General's response"] filed on April 5, 2007, attached as Exh. C at pages 15-17 [000049-51] [noting that "it is precisely because

14

reasonable minds have differed in good faith application of [the SPPCA] that the assistance of this Court is required to settle the question"].)

The validity of the SPPCA's residency restriction is of urgent statewide importance. DAPO announced suddenly in late August of 2007 that it would apply the restriction to thousands of parolees in California. Respondent has already begun to drive parolees from their homes by serving them with a new parole condition based on the SPPCA's residency restriction. This occurred despite the fact that there is apparently great confusion on the State's part as to how to interpret the SPPCA's residency restriction. (Attorney General's Response, at 15-17, Exh. C at 000049-51 [noting disagreement between local District Attorneys, the Attorney General, and the Governor as to whom the residency restriction should apply to and whether SPPCA's residency restriction makes it a crime to violate the residency restriction].) With almost every residential neighborhood in every city in California, and many suburban areas, off limits under that restriction, many registered sex offenders are not only about to lose their homes – they are being driven onto the street as transients. Indeed, one of Petitioners already became homeless last week as a result of receiving a 45-day notice to leave his home. To quote the Attorney General, "Local governments and law enforcement agencies throughout the state need to have this issue resolved dispositively once and for all." (Attorney General's Response, at p. 18, Exh. C at 000052.)

15

Given the widespread effect on thousands of peoples' lives statewide, the burden to counties who find themselves with suddenly expanded homeless populations, the confusion within government and between government and the state Attorney General as to the statute's application, and the urgent need for Petitioners and others in their situation to be able to maintain their homes with their families, the assistance of this court is respectfully requested to stop implementation of a statute that is manifestly unlawful on its face and as applied.

## ARGUMENT

### I.    EMERGENCY TEMPORARY RELIEF IS REQUIRED TO MAINTAIN THE STATUS QUO AND PREVENT IRREPARABLE INJURY

Petitioners request that the Court immediately restrain Respondents from enforcing Penal Code section 3003.5, subdivision (b).  Because section 3003.5, subdivision (b) violates both Federal and State law, and because Petitioners face immediate and irreparable injury – incarceration or homelessness – Petitioners hereby seek a temporary order preventing the implementation of section 3003.5, subdivision (b).

The Court is authorized to issue an injunction or a temporary restraining order pursuant to a writ of habeas corpus. "Inherent in the power to issue the writ of habeas corpus is the power to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus." (*In re Crow* (1971) 4

16

Cal.3d 613, 620 n.7 [citing Penal Code § 1484].)  Such power is reflected in Penal

Code section 1484's directive that, in habeas proceedings, the Court "dispose of

such party as the justice of the case may require, and have full power and authority

. . . to do and perform all other acts and things necessary to a full and fair hearing

and determination of the case." (See also 6 B.E. Witkin, Cal. Crim. Law, Crim.

Writs, §§ 78-79 (3d ed. 2000) [court authorized to fashion appropriate orders and

remedies in habeas proceedings].)  Thus, the Court has held that habeas corpus

proceedings may afford broad injunctive relief and "may be utilized as an

alternative to actions for declaratory or injunctive relief and/or mandamus." (*In re*

*Head* (1986) 42 Cal.3d 223, 228; *In re Henderson* (1964) 61 Cal.2d 541, 544

[broad injunctive relief awarded on habeas, including order to reinstate appeal,

provide attorney, and order municipal court to grant petitioner's request for a free

transcript].)  Accordingly, courts have issued temporary restraining orders and

injunctions pursuant to habeas corpus proceedings.  (See e.g., *In re Alclala* (1990)

222 Cal.App.3d 345, 352 & n.4 [noting that temporary restraining order issued

pursuant to habeas petition enjoining enforcement of prison restrictions on

clothing and that habeas proceedings proper to address issue]; *Faucette v. Dunbar*

(1967) 253 Cal.App.2d 338, 340, 346 [affirming preliminary injunction issued

pursuant to habeas petition enjoining revocation of petitioner's parole solely

17

because of residence at particular narcotics rehabilitation center without further
inquiry and review by Adult Authority].)

### A.    Petitioners Have Demonstrated a Strong Likelihood of Success on the Merits.

The Attorney General's filings in *In re Wade* establish that, at the very least,
there is uncertainty and a need for clarification on the implementation of section
3003.5, subdivision (b).  As Petitioners establish in the arguments set forth below,
the 2,000-foot residence restriction suffers from fatal constitutional, statutory, and
common law flaws.  Therefore Petitioners have established a strong likelihood of
success on the merits.

### B.    Petitioners and Those Similarly Situated Are Certain to Suffer Irreparable Harm.

All Petitioners and other similar parolees have been informed that they face
certain incarceration if they fail to comply with the residency restrictions.  Because
the 2,000-foot restriction is so expansive that it renders nearly all residential
neighborhoods in the metropolitan and suburban areas of California off limits,
making compliance impossible for Petitioners and other section 290 registrants,
Petitioners will be irreparably harmed by becoming homeless or imprisoned.

18

**C.    The Balance of Harms Favors an Injunction Because the State's Action Will Harm Public Safety and Disrupt Communities by Forcing Petitioners and Those Similarly Situated into Homelessness.**

While the harm to Petitioners is certain, the benefit to Respondents and the public is speculative at best.  There is no evidence that this residency restriction will prevent any future crime; in fact, the forced homelessness of parolees may well increase the risk of future crime or municipal code violations.[3]  (*See* Iowa Country Attorneys Association, Statement of Sex Offender Residency Restrictions in Iowa, February 14, 2006, ¶¶ 4, 14, Exh. F at 000060-63.)  The absence of a clear threat to public safety (if Petitioners are allowed to stay in their homes) is illustrated best by the fact that Respondent waited more than nine months before enforcing the restriction as a parole condition.  A delay of a few more months to resolve  the serious legal issues presented by this case will do no more harm.

---

[3]*See e.g.*,  Colorado Office of Domestic Violence and Sex Offender Mgmt., *"Report of Safety Issues Raised by Living Arrangements for and Location of Sex Offenders in the Community,"* (Mar. 15, 2004), Exh. H; Minnesota Dep. of Corr., *"Level Three Sex Offenders: Residential Placement Issues; 2003 Report to the Legislature,"* (Jan. 2003, revised Feb. 2004), Exh. I; Levenson, Jill, *"Sex Offender Residence Restrictions: A Report to the Florida Legislature,"* (Oct. 2005), Exh. J; Levenson and Cotter, Leo, *"The Impact of Sex Offender Residence Restriction: 1,000 Feet From Danger or One Step From Absurd?";* International Journal of Offender Therapy and Comparative Criminology, 49(2) 2005, 168.), Exh. K; *No Easy Answers, Sex offenders in the U.S.,* Human Rights Watch (Sept. 2007) Exh. G, available at http://hrw.org/reports/2007/us0907/9.htm.

## II.    THE RESIDENCY RESTRICTION IS INVALID AS IT IS AN UNREASONABLE PAROLE CONDITION

Each Petitioner has been served with a modified condition of parole which directs him to comply with section 3003.5, subdivision (b)'s restriction on residing within 2,000 feet of a park or school where children regularly gather.[4] (Sealed Declarations of E.J., S.P., J.S., and K.T.)  However, such a condition is unreasonable and invalid. (*In re Stevens* (2004) 119 Cal.App.4th 1228, 1234 ["[p]arole conditions, like conditions of probation, must be reasonable since parolees retain constitutional protection against arbitrary and oppressive official action."] [citation omitted]; Cal. Penal Code § 1203.1, subd. (j) [conditions of probation must be "reasonable"]; *In re Stevens,* (2004) 119 Cal.App.4th 1228, 1234 (probation law interpreted the same as parole law)].)

A condition that "requires or forbids conduct which is not in itself criminal" is invalid when it: (1) has no relationship to the crime of which the offender was convicted, and (2) requires or forbids conduct which is not reasonably related to future criminality. (*People v. Dominguez,* (1967) 256 Cal.App.2d 623, 627-28; *People v. Bauer* (1989) 211 Cal.App.3d 937, 942 [citing *People v. Lent* (1975) 15

---

[4]Petitioners accepted the modified parole condition.  However, they are not barred from accepting conditions and subsequently contesting a condition they believe are unduly restrictive. *See People v. Bauer* (1989) 211 Cal.App.3d 937, 940; *People v. Dominguez* (1967) 256 Cal.App.2d 623, 629.

Cal.3d 481, 486; *People v. Kiddoo*, 225 Cal.App.3d 922, 926 (1990); *In re Bushman* (1970) 1 Cal.3d 767, 776-777.)

Where parole conditions impinge on a constitutionally protected right, an even stricter scrutiny applies. In such instances, the condition must be so carefully tailored that it is "reasonably related to the compelling state interest in reformation and rehabilitation." (*In re White*, 97 Cal.App.3d 141, 146 (1979); see also *People v. Pointer* (1984) 151 Cal.App.3d 1128, 1139 ["where a condition of probation impinges upon the exercise of a fundamental right and is challenged on constitutional grounds we must additionally determine whether the condition is impermissibly overbroad"].) Indeed, when viewed under the strict scrutiny lens, a parole condition only passes muster if it is "narrowly drawn and *specifically tailored to the individual probationer.*" (*In re Babak* (1993) 18 Cal.App.4th 1077, 1084 [emphasis added]; see also *Stevens*, 119 Cal.App.4th at 1237 [striking total internet ban as a condition on sex offender's parole because "it is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends"].)

21

A.    The Residency Restriction Impermissibly Impinges On
      Constitutionally Protected Rights.

    1.    The Residency Restriction Impinges On Petitioner's
      Fundamental Interests In Residing In Their Homes
      And Living With Their Families.

Petitioners must leave their homes or suffer further incarceration. For

Petitioners who are ordered to stay in their counties, but whose counties contain no

available SPPCA compliant housing, this restriction means permanent

homelessness. Petitioner J.S. has already become homeless. (See Sealed

Declaration of J.S. ¶ 4, DECS006.) For Petitioner K.T., complying will mean

leaving his disabled wife to fend for herself. (See Sealed Declaration of K.T. ¶¶ 3,

13, DECS 008, 010.) For Petitioner S.P., complying will mean severing family

connections. (See Sealed Declaration of S.P. ¶ 2, DECS003.) And for Petitioner

E.J., complying will mean leaving his wife and four children under the age of 12.

(See Sealed Declaration of E.J. ¶ 2, DECS001.)

Petitioners have a substantial liberty interest in residing in their homes and

with their families. The Supreme Court has repeatedly held that "Fourteenth

Amendment liberty includes 'the right . . . to live and work where [one] will.'"

(*Washington v. Glucksberg* (1997) 521 U.S. 702, 760 [Kennedy, J., concurring];

*Moore v. East Cleveland* (1977) 431 U.S. 494.) In *Cleveland Board of Education

v. LaFleur* (1974) 414 U.S. 632, 639-640 the Court held that "freedom of personal

choice in matters of . . . family life is one of the liberties protected by the Due

22

Process Clause of the Fourteenth Amendment." Indeed, these interests are "fundamental." (*Griswold v. Connecticut* (1965) 381 U.S. 479 495 [Goldberg, J., concurring]; *Moore v. City of East Cleveland* (1977) 431 U.S. 494, 499.) In *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), the Court held it is "[w]ithout doubt" that among the liberty interests protected by the Fourteenth Amendment is the right "to . . . establish a home."

The California Constitution's guarantee of the inalienable right to privacy likewise protects an individual's right to live in one's home, and with whom one chooses to live, including one's family. (See Cal. Const. Art. I, § 1; *White v. Davis* (1975) 13 Cal.3d 757, 774 ["The right of privacy . . . protects our homes, our families"]; *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 213 [in-kind benefit program infringed on right to privacy because it "compels the individual to give up his home.... [and] force[s him] to live in a particular location without the freedom to choose his own living companions."]; *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 130 [Constitution protects "right of privacy not only in one's family but also in one's home"]; *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 680, 686 [recognizing "'autonomy privacy' interest in choosing the persons with whom a person will reside" and that home is "a place that is traditionally protected most strongly by the constitutional right of privacy."]; *Park Redlands Covenant Control Committee v. Simon* (1986) 181 Cal.App.3d 87, 97

23

[recognizing privacy rights to choose with whom one lives and to live as a family]; cf. *Schmidt v. Superior Court* (1989) 48 Cal.3d 370, 389-90 [rejecting privacy challenge on grounds that policy, *inter alia,* does not "purport to compel the separation of parent and child or to preclude the family from living together in an entire city or neighborhood[.]"] [internal citations omitted].)

Petitioner K.T. also has significant property interests in residing in his family home. (Sealed Decl. Of K.T. ¶ 2, DECS008.) In *Greene v. Lindsey* (1982) 456 U.S. 444, the Supreme Court held that renters had a due process right to adequate notice and a hearing before they could be evicted from their homes. The Court held that "the right to continued residence in [one's] home" is a "significant interest in property" protected by the Fourteenth Amendment. (*Id*. at 450-451; cf. *Mathews v. Eldridge* (1976) 424 U.S. 319, 322 [recognizing property interest in Social Security disability payments].) California similarly recognizes an individual's interest in their rented property as a "substantial" – even  a "sacred" -- right. (*Mendoza v. Small Claims Court of Los Angeles* (1958) 49 Cal.2d 668, 672 ["Nor can there be any doubt that possession of a tenant is a substantial right. The right to retain property already in possession is as sacred as the right to recover it, when dispossessed."]; see also *Arrieta v. Mahon* (1982) 31 Cal.3d 381, 389; Cal. Const. Art. 1, section 1; Cal. Const. Art. 1, section 7.) Indeed, Petitioner K.T.'s property interest in remaining in the homes that his family owns is at least as

24

significant as that possessed by the plaintiffs in *Greene, Mathews, Mendoza*, or *Arrieta*.

The Court of Appeals has specifically rejected conditions placed on a probationer's residence that impinge on constitutional entitlements to travel and freedom of association because rather than being "narrowly tailored to interfere as little as possible with these important rights, the restriction was extremely broad." (*Bauer*, 211 Cal.App.3d at 944.) Similarly, in *People v. Beach* (1983) 147 Cal.App.3d 612, 620, the Court of Appeals struck a condition of probation that it held amounted to banishment– that the probationer "relocate herself from the community where she has lived in her own home for 24 years." The court found that the condition impinged on the probationer's right to intrastate travel, which, in turn, touched on other rights, holding:

> The right to acquire, own, enjoy and dispose of property is also a basic fundamental right guaranteed by the Fourteenth Amendment to the United States Constitution. Intrinsic and integral to this right is the basic ability to possess one's own property. Could it be rationally argued that the enjoyment of the fruits of property ownership does not directly depend upon the owner's free and unimpaired access to, and possession of, said property.

*(Id.* at 622 [italics omitted]; cf. *In ex parte Scarborough* (1946) 76 Cal.App.2d 648, 650 [striking a condition of probation that required the probationer to leave counties where he had been convicted and served his sentence since the "same principle which prohibits the banishment of a criminal from a state

25

or from the United States applies with equal force to a county or city"]; *People v. Blakeman* (1959) 170 Cal.App.2d 596, 597 [condition of probation that provided for suspended sentence if probationer absented himself from county was struck down because it "was beyond the power of the court to impose banishment as a condition of probation"].)

Here, Petitioners possess "significant" and "fundamental" constitutionally protected liberty and property interests in continuing to reside in their homes with their families. Since the residency restriction requiring them to abandon their homes impinges on their constitutionally protected rights it must meet the heightened requirement that it is not overbroad and is reasonably related to the state interest in reformation and rehabilitation. (*Meyer v. Nebraska* (1923) 262 U.S. 390, 399; *In re White* (1979) 97 Cal.App.3d 141, 146.)

### 2.    The Residency Restriction Is Overbroad

The residency restriction is manifestly overbroad. First of all, it is being applied to Petitioners whose underlying crimes *did not in any way involve children.* The crime which triggered sex offender registration for J.S. was urinating in public. (Sealed Decl. of J.S. ¶ 5, DECS006.) The crimes which triggered registration for E.J. and K.T. were the rape of adult women. (Sealed Decl. of K.T, ¶ 14, DECS010; Sealed Decl. Of E.J. ¶ 8, DECS002.) Neither one of these Petitioners has ever been convicted of a crime involving children. The

26

crime which triggered sex offender registration for S.P. involved sexual contact among teenagers at a party, not victimization of a child by an adult predator. (Sealed Decl. of S.P., ¶ 8, DECS004.) S.P. was 16; the girl was 15. *Ibid.* It is not reasonable to assume that someone who has a sex offense involving relations among older adolescents is a danger to children. Petitioners are being required to leave their homes for the simple reason that they live within 2,000 feet of a school or a park where children regularly gather, yet they have no history of perpetrating crimes against children.

Indeed, other states that have enacted sex offender residency restrictions restrict application of the residency restriction not just to those whose underlying offence involved children, but to a narrowly tailored population of potential recidivists considered "high risk". (See e.g., Ark. Code Ann. § 5-14-128(a) [applying residency restrictions only to "level 3" and "level 4" offenders].)

Secondly, as set forth above, the 2,000-foot restriction is so unreasonably broad that it makes almost every residential neighborhood in the cities in which Petitioners live off limits. (Exh. E at 000058-59.) Indeed, the SPPCA is

27

significantly broader and more punitive than any other sex offender residency restriction in the country:[5]

• The SPPCA's 2,000-foot residency restrictions zones are amongst the largest in the country. (Cf. Ga. Code Ann. § 42-1-15 [creating 1,000-foot residency restriction zones]; 720 Ill. Comp. Stat. § 5/11-9.3 (b-5) [500-foot residency zones].)

• The SPPCA applies to every person required to register as a sex offender in California, regardless of the type of previous conviction, assessment of dangerousness, or risk of re-offending. (Cf. Ark. Code Ann. § 5-14-128(a) [applying residency restrictions only to level 3 and 4 sex offenders]; Fla. Stat. Ann. § 947.1405(7)(a)(2) [restricting residency around schools and parks only if victim was a minor]; Ind. Code § 35-38-2-2.2 [providing judges discretion to lift residency restrictions]; Iowa Code § 692A.2A(1) [restricting residence only where victim was a minor]; Ky. Rev. Stat. § 17.545(5) [limiting residency restrictions only to adult offenders].)

• The SPPCA residency restriction applies for life. (Cf. Tex. Crim. Proc. Code Ann. § 42:12, Sec. 13B(a) [imposing residency restriction only during

---

[5](See Jodi Schwartzberg & Annie Lo, *"The Law and Policy of Sex Offender Residency Restrictions: An Analysis of Proposition 83" (Public Law Research Institute, Fall 2006) at 1-2,* available at http://www.uchastings.edu/?pid=4490 ("Compared to residency restrictions adopted in other states, California's proposed residency restriction is notable particularly for its breadth...The Propositions' 2,000 foot ban is significantly more restrictive than many other states' bans...the ban could effectively exclude offenders from entire cities and counties in California."), Exh. M at 000327-328.)

probation and supervised release]; Ga. Code Ann. §§ 42-1-15, 42-1-12 (g)(2)(B) [relieving certain residency restrictions after 10 years].)

     • The SPPCA does not contain a grandfather clause to protect the rights of those registrants who already own or rent their homes in restricted areas. (Cf. Iowa Code § 692A.2A(4)(d) [providing that new sex offender residency restrictions shall not apply to residences established when the statute went into effect].)

     Furthermore, the residency restriction does nothing to assist the government in its effort to prevent recidivism and to rehabilitate offenders. As set forth more fully below, forcing sex offenders to leave their homes actually undermines public safety by separating them from their families, employment, support, and rehabilitation networks. And where, as here, many offenders are forced to become homeless, they face additional hurdles in avoiding recidivism. Sleeping in public places, for instance, may result in a misdemeanor offense. (See Cal. Penal Code § 647 subd. (j) ["Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:...Who lodges in any building, structure, vehicle, or place, whether public or private, without the permission of the owner or person entitled to the possession or in control of it."].)

     Since it is so overtly overly broad and not conducive to assisting the government in rehabilitating and preventing recidivism, it is an understatement to

say that this residency restriction is a far cry from the requirement that it be a "focused restriction." (*In re Stevens*, 119 Cal.App.4th at 1239.)

### B.    Even If The Restriction Were Not Subject To A Strict Scrutiny Review, It Is Invalid because It Is Not reasonably Related To The Offense Or The Offender.

Even if the restriction did not impinge upon a constitutional right, which it clearly does, the residency restriction is invalid as an unreasonable condition under the *Dominguez/Lent* test. (*Dominguez*, 256 Cal.App.2d at 627; *Lent*, 15 Cal.3d at 486; *Bauer*, 211 Cal.App.3d at 942; *In re Stevens*, 119 Cal.App.4th at 1234 [probation law interpreted the same as parole law].) As set forth above, there is a marked absence of any connection between the condition of Petitioners' parole and their underlying offense. The requisite connection between the residency restriction and the prevention of future criminal acts is also absent. (*Dominguez*, 256 Cal.App.2d at 628; *Lent*, 15 Cal.3d at 486.)

### 1.    The Conditions Have No Relationship To Petitioners' Prior Offenses.

California courts have repeatedly struck down probation conditions that were not related to the underlying crimes. In *People v. Kiddoo* (1990) 225 Cal.App.3d 922, defendant was convicted of possession of methamphetamine but was not allowed possess or consume alcohol or to frequent places in which alcohol was sold as a condition of his probation. Such a condition was invalid because of the lack of connection between alcohol consumption and methamphetamine

30

possession. *Id.* at 928.  Similarly, in *People v. Burden*, 205 Cal.App.3d 1277 (1988) a condition of probation that prohibited defendant from being employed as a salesperson was not valid where the condition had no relationship to his crime (drawing checks on insufficient funds).  (*Id.* at 1279-1280.)

As set forth above, none of the Petitioners committed crimes even remotely related to the predatory attacks on young children that motivated Proposition 83. And yet the new condition nonsensically requires that they abandon their homes because they live too close to schools or parks where children regularly gather. The condition that Petitioners not be allowed to live within 2,000 feet of a school or park where children regularly gather is thus unreasonable when applied to them.

### 2.     The Requisite Connection Between The Conditions And The Prevention Of Future Criminal Acts Is Also Absent.

The second step in determining whether a condition is reasonable in the absence of a constitutional impingement is whether or not the condition will help prevent future criminal conduct.  (*Dominguez*, 256 Cal.App.2d at 627; *Lent,* 15 Cal.3d at 486.)  Here, the restriction not only does not *prevent* future criminality, it arguably *causes* future criminality.

Where, as here, a condition contributes nothing to public safety, and in fact the condition exacerbates circumstances that may result in future crimes, California courts have found conditions invalid. (See e.g., *Beach,* 147 Cal.App.3d at 620-623; *Burden,* 205 Cal.App.3d at 1280-1281; *People v. Fritchey* (1992) 2

31

Cal.App.4th 829, 837-838.) Thus in *People v. Beach,* a probation condition that required a woman to relocate to a different community was unreasonably broad because keeping appellant out of her home and neighborhood would not necessarily prevent future criminal conduct. *(Beach,* 147 Cal.App.3d at 620-623.) The court emphasized that the condition might have the opposite effect in that "taking appellant away from her established home, the companionship of her neighbors, and the familiarity of her surroundings would not contribute to inner feelings of physical security... and may very well heighten her feelings of insecurity." *(Id.* at 621; see also *Burden,* 205 Cal.App.3d at 1280-1281 [condition that defendant not work as a salesperson was invalid where it was not reasonably related to future criminality since he "could have worked at any job and perpetrated the same kind of fraud" that he was convicted of].)

The probation condition at issue in *People v. Fritchey* (1992) 2 Cal.App.4th 829, 837-838 – that defendant forfeit his truck – also failed the test of reasonableness under *Lent* because the defendant's lawful ownership of a truck was conduct which is not itself criminal and was not reasonably related to future criminality. This was true even where the truck had contained burglary tools and was used in the defendant's crime. *(Id.* at 837-838.) In so holding, the *Fritchey* court stated that a "reasonable condition of probation is not only fit and appropriate to the end in view but it must be a reasonable means to that end.

32

Reasonable means are moderate, not excessive, not extreme, not demanding too much, well-balanced." (*Id.* at 837-838.)

Forcing sex offenders to leave their homes actually *undermines* public safety by driving sex offender registrants underground and separating others from existing family, employment, support, and rehabilitation networks. Peer-reviewed sociological and criminological studies of sex offender residency restrictions enacted in other states demonstrate that residency laws which effectively ban ex-felons from living in (but not frequenting) certain areas where children congregate have no correlation to reduced incidents of sexual assault and actually increase the likelihood of recidivism among those offenders banished from their communities. (See above, footnote 3.)

Homelessness only worsens recidivism and rehabilitation efforts. Indeed, forced from his home because of the new restriction on September 26, 2007, Petitioner J.S. has been struggling to not commit another offense. At his parole agent's directions, he must sleep in public places, a misdemeanor in San Diego. (See Cal. Penal Code s 647(j); San Diego Mun. Code, Chapter 6, Art. 3, Div. 1, section 63.0102(b)(12).) The residency requirement also makes it virtually impossible for J.S. to comply with his other parole conditions. He is required to wear a GPS monitor but since he became homeless, he has struggled to find a

33

place to recharge his GPS monitor -- which he is required to do every 12 hours.

(See Sealed Decl. of J.S. at ¶ 6, DECS006-7.)

A review of results of residency restrictions in other States further proves

that the restriction will only frustrate efforts to supervise and rehabilitate

offenders. In Iowa, for example, the Iowa County Attorneys' Association, an

organization of prosecuting agencies throughout the state, has issued a statement

enumerating the unintended consequences of enforcing Iowa's similar residency

restriction, including:

> The drastic reduction in the availability of appropriate housing, along
> with the forced removal of many offenders from established
> residences, is contrary to well-established principles of treatment and
> rehabilitation of sex offenders. Efforts to rehabilitate offenders and
> to minimize the rate of reoffending are much more successful when
> offenders are employed, have family and community connections,
> and have a stable residence. These goals are severely impaired by
> the residency restriction, compromising the safety of children by
> obstructing the use of the best known corrections practices. (Exh. F
> at 000062-63, ¶ 14.)

For these reasons, the Iowa County Attorneys' Association urged the

General Assembly and Governor to replace the restriction "with measures that

more effectively protect children, that reduce the unintended unfairness to innocent

persons and that make more prudent use of law enforcement resources." (Exh. F at

000064.) Law enforcement officials in Iowa echo these concerns, finding that the

restrictions are forcing offenders into rural parts of the county where they are far

harder to keep track of, or worse, forcing them to go "underground," where they

cannot be monitored at all. (Exh. N at 000361.) As one Sheriff in Cedar Rapids,

Iowa observed, "We're finding that it's almost impossible to keep track of individuals we have registered in the county. . . . Five years ago, we knew where about 95 percent of those individuals were. Now we're lucky if we know where 50, 55 percent of them are." (*Ibid.*) Similarly, in Oklahoma, since instituting residency restrictions, hundreds of registered offenders have dropped off the state's registry. (Exh. G at 000177.)

Requiring Petitioners to leave their homes (and forcing homelessness upon them) does not prevent future criminality. Rather, the residency restriction severely *undermines* public safety. As such it must be stricken as to all Petitioners.

### III. THE PROPOSITION 83 RESIDENCY RESTRICTION VIOLATES SECTION 3 OF THE CALIFORNIA PENAL CODE WHICH PROHIBITS RETROACTIVITY OF PENAL STATUTES

The 2,000-foot restriction as applied to section 290 registrants who committed underlying sex offense prior to November 8, 2006 violates Penal Code section 3, which states, "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." Absent an express declaration, a statute may only apply retroactively if "there is 'a clear and compelling implication'" that the legislature or the voters intended such a result. (*In re Chavez* (2004) 114 Cal.App.4th 989, 993.)

A law is considered to be retroactive if "it attaches new legal consequences to, or increases a party's liability for . . . conduct that was *completed* before the

law's effective date." (*People v. Grant* (1999) 20 Cal.4th 150,157.) A law is retroactive if "[the last] event necessary to trigger application of the statute occurred before . . . the statute's effective date." (*Ibid.*) In this instance, section 3003.5, subdivision (b) states that the housing restrictions apply to "any person for whom registration is required pursuant to Section 290." The last event necessary to trigger application of the housing restrictions is registrant's underlying sex offense. Respondents, however, have chosen to defy section 3's rule of non-retroactivity, and to enforce the 2,000-foot limit against Petitioners and others similarly situated whose section 290 offenses occurred years before November 8, 2006. This is an impermissible retroactive application of a statute that is silent as to retroactivity. (See *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298 ["application of [the statute] to crimes committed before the measure's effective date would be 'retrospective' because [it] would change the legal consequences of the defendant's past conduct"].)

### IV.    THE IMPOSITION OF THE RESIDENCY REQUIREMENTS ON PERSONS RELEASED FROM NON-SEX OFFENSE TERMS IS NOT AUTHORIZED BY PROPOSITION 83

Respondents are acting beyond their statutory authority by imposing the 2,000-foot restrictions on persons not covered by the statute. As part of a statute defining parole conditions, section 3003.5, subdivision (b) must be read in conjunction with the entire statute, including the preceding subdivision (a). (See

*People v. Johnson* (1995) 33 Cal.App.4th 623, 631 ["statutes which are *in pari materia* should be read together and harmonized if possible"].) Section 3003.5, subdivision (a) provides that "*when a person is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to Section 290*, that person may not, during the period of parole, reside in any single family dwelling with any other person also required to register pursuant to Section 290, unless those persons are legally related by blood, marriage, or adoption." (emphasis added) Subdivision (b) adds a condition regarding proximity to schools and parks where children regularly gather. The subdivision (b) condition must be read in conjunction with the subdivision (a) condition to apply only when a person is released on parole after having served a term of imprisonment for a section 290 offense. The residency restrictions of section 3003.5, subdivision (b) may only be applied to only those parolees released after November 8, 2006 after having served a term "for any offense for which registration is required pursuant to Section 290."

The omission of any criminal penalty to enforce of the residency restrictions in section 3003.5, further supports the conclusion that subdivisions (a) and (b) are meant to be read together. No criminal penalty of any kind is provided for a violation of the housing restrictions in section 3003.5, subdivisions (a) and (b). Nor do subdivisions (a) or (b) specify that failure to follow the housing restrictions

37

would be a "public offense," which would be necessary to bring the restriction within the catch-all provision of Penal Code section 19.4.

### V.    THE PROPOSITION 83 RESIDENCY RESTRICTION VIOLATES THE EX POST FACTO CLAUSE AS APPLIED TO PERSONS WHO COMMITTED SEX OFFENSES BEFORE THE NOVEMBER 8, 2006 EFFECTIVE DATE.

The 2,000-foot restriction violates the Ex Post Facto Clause of the United States Constitution as applied to persons whose sex offenses were committed before the passage of the law on November 7, 2006. The United States Supreme Court has defined three distinct types of ex post facto violations: (1) "'any statute which punishes as a crime an act previously committed, which was innocent when done;'" (2) any statute "'which makes more burdensome the punishment for a crime, after its commission;'" and (3) any statute "'which deprives one charged with crime of any defense available according to law at the time when the act was committed.'" (*Collins v. Youngblood* (1990) 497 U.S. 37, 42 [*quoting Beazell v. Ohio* (1925) 269 U.S. 167, 169-170].)

The 2,000-foot restriction, as applied to persons who committed sex offenses before November 8, 2006, falls into the second category of ex post facto violations, in that it "makes more burdensome the punishment for a crime, after its commission." A law violates this aspect of the Ex Post Facto Clause if it operates retroactively by punishing conduct completed before its enactment and adds to the

38

penalty already imposed. (See *Weaver v. Graham* (1981) 450 U.S. 24, 29-30; see also *Johnson v. United States* (2000) 529 U.S. 694, 699.)

The SPPCA's 2,000-foot restriction is sufficiently punitive to trigger the Ex Post Facto Clause. In assessing whether a statute is punitive, the court must determine whether the purpose of the statute was to establish a non-punitive, regulatory scheme or to impose punishment. (See *Smith v. Doe* (2002) 538 U.S. 84, 92.) If the statute was enacted to impose punishment, then it is a facial violation of the Ex Post Facto Clause. (*Ibid.*) If, however, the statute was intended to be regulatory, an individual must demonstrate that the scheme is "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil" to establish a Constitutional violation. (*Ibid.*) Here, both tests are met, in that the SPPCA's intent and effect are punitive.

### A.    The Purpose of the 2,000-foot Restriction Is Punishment.

In determining whether a statute is punitive in nature, the court must assess the legislature's intent by considering the statutory language and structure. (See *Smith v. Doe,* 538 U.S. at 92.) Under California law, the intent of the voters in a voter-passed initiative is paramount, and can be determined from the ordinary language of the statute. (See *Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234.)

The SPPCA's short title is the "The Sexual Predator *Punishment* and Control Act: Jessica's Law." (Prop. 83, section I [*emphasis added*] Exh. A at

39

000007].) The initial findings and declarations state that California places a "high priority on maintaining public safety through laws that deter and punish criminal behavior." (*Id.* at section 2(a).) In order to meet such public safety goals, the statute provides that "adequate penalties must be enacted to ensure predators cannot escape prosecution." (*Id.* at section 2(d).) The voters' guide states that the initiative "[i]ncreases penalties for violent and habitual sex offenders and child molesters." (Exh. A at 000001.)

### B.     The Effect of the 2,000-foot Restriction Is Punitive.

The Supreme Court in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144 articulated non-dispositive factors to be considered when determining whether the law's effects are punitive. The factors include, but are not limited to: whether the law has traditionally been regarded as a punishment, whether the law has a rational connection to a non-punitive purpose, and whether the law is excessive in relation to that other assigned purpose. (*Ibid.*)

. In many counties, there is nowhere for section 290 registrants to live that meets the 2,000-foot limit. (See Exh. E at 0000058-59.) These restrictions can also be limitlessly expanded under the statute, as section 3003.5, subdivision (c) allows for municipal jurisdictions to enact local ordinances imposing further residency restrictions on section 290 registrants.

40

The 2,000-foot restriction is excessive in relation to its stated purpose, and has no rational connection to that purpose. (See *Kennedy v. Mendoza*, 372 U.S. at 168-169.) The stated purpose of 2,000-foot restriction is to increase child safety. (See Prop. 83, section 29(c), Exh. A at 000007.) The imposition of the 2,000-foot restriction against all section 290 registrants, including those whose offense did involve children, is excessive and has no rational connection to the purpose of increasing child safety. Indeed, such restrictions degrade public safety as section 290 registrants who cannot find housing are either driven underground, are forced to become transient (increasing the difficulty of adequate supervision by parole and law enforcement), and/or separated from friends, family, employment and other support networks.

### C.    Enforcement Through A Parole Condition Does Not Cure The Ex Post Facto Violation.

New laws that make the punishment for a prior crime more burdensome violate the Ex Post Facto Clause regardless of whether the punishment is enforced in connection with parole conditions. (See *United States v. Jackson* (9th Cir. 1999) 189 F.3d 820, 824 [parole condition arising from change in law after commission of underlying offense violates Ex Post Facto Clause if the condition is punitive].)

In *People v. Callejas* (2000) 85 Cal.App.4th 667, the court determined that the Ex Post Facto Clause barred the imposition of a parole revocation fine where

the underlying offense was committed prior to the enactment of the statute. In *Callejas*, the petitioner committed a drunk driving offense in 1993, and was sentenced to probation. (*Id.* at 669.) In 1995, the legislature added a "parole revocation fine" to the Penal Code. (*Ibid.*) In 1999, Callejas was re-sentenced for the 1993 drunk driving offense and the superior court imposed the new parole revocation fine as part of the sentence. (*Ibid.*) The Court of Appeals held that new parole revocation fine increased penalties in a manner that differed from the conditions in place at the time of Callejas's underlying offense, not future violations of parole. (*Id.* at 677-678.)

*Callejas* followed the rule of *Johnson v. United States* (2000) 529 U.S. 695, in holding that for ex post facto purposes, a parole revocation penalty relates back to the original offense, and not to a future parole violation. *Johnson* concerned the imposition of an additional supervised release term after violation of parole. (See *id.* at 700-701.) Holding that post-revocation penalties must be attributed to the original conviction, the Court determined that the imposition of an additional supervised release term would alter the conditions upon which the Petitioner was originally sentenced and be a retrospective application of the statute barred by the Ex Post Facto Clause. (*Id.* at 701.)

Both *Johnson* and *Callejas* establish that the application of the SPPCA to parolees who committed section 290 offenses prior to the statute's passage on

42

November 7, 2006 would be retrospective, regardless of whether such parolees were released from custody after the statute's effective date, as the new housing restrictions fundamentally alter the parole scheme under which they were sentenced. Because the SPPCA's 2,000-foot restriction is punitive in intent and effect, such retrospective application violates the Ex Post Facto Clause.

## VI.   THE RESIDENCY RESTRICTIONS OF PROPOSITION 83 ARE IMPERMISSIBLY VAGUE AND VIOLATE PETITIONERS' FUNDAMENTAL RIGHT TO DUE PROCESS

Section 3003.5, subdivision (b) is unconstitutionally vague because it does not define the terms in the statute that would, if defined, tell Petitioners and others similarly situated where they are permitted to live. When a penal statute does not provide an individual with sufficient notice of permissible conduct, it will be found void for vagueness. (See *Kolender v. Lawson* (1983) 461 U.S. 352, 357; see also *Lanzetta v. State of New Jersey* (1939) 306 U.S. 451, 453 ["No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids"].) The statute must also be definite so as to provide explicit standards for those who apply it in a manner that does not encourage arbitrary and discriminatory enforcement. (See *Kolender*, 461 U.S. at 357. )

Under section 3003.5, subdivision (b) "it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2,000 feet

43

of any public or private school, or park where children regularly gather." This is the extent of the housing restrictions contained in the statute. The statute contains no definition of what constitutes "reside" for the purposes of the statute, how the 2,000 feet between a parolee's residence and an offending school and/or park is to be measured, or, most problematic, what constitutes "a park where children regularly gather." Such vagueness and lack of definition violates a parolee's right to due process, as they have no fair warning as to where they may legally reside. (See *Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 ["Vague laws may trap the innocent by not providing fair warning"].)

The vagueness of the statute with respect to what constitutes a "park where children gather," is encouraging arbitrary enforcement by law enforcement personnel throughout the State. (See *Kolender*, 461 U.S. at 358.) Each individual parole unit has almost complete discretion to determine whether or not a parolee is in compliance with the housing restrictions, based on an independent assessment of what constitutes "a park where children regularly gather." In some counties, parole agents have determined that beaches and commercial ballparks are considered "parks where children regularly gather," while in other counties parole agents are declaring all parks off limits, regardless of whether children are known to regularly gather at the location. (Sealed Decl. of J.S. ¶ 7, DECS007.) Some

44

parolees are even being told that baseball stadiums are prohibited locations if the stadiums have the word "park" in the name. (*Id.*)

In addition, Respondent has chosen to define the 2,000 foot distance term of the statute to mean 2,000 feet "as the crow flies." (Sealed Decl. of K.T. ¶ 8, DECS009.)  Some individuals are thus being forced from their homes even though the school or park at issue is located on the other side of a freeway, with no means of access along a path anyway near as short as 2,000 feet. The impermissibly vague nature of the statute allows this sort of arbitrary and capricious enforcement with no consideration for the interests intended to be served.  Parolees themselves are unable to come into compliance with the housing restrictions because of the vagueness of the statutory language coupled with the arbitrary enforcement of its restrictions. Parolees attempting to find housing on their own cannot rely on maps to locate compliant housing if there are no consistent or explicit instructions as to what constitutes a "park where children gather."  This is especially problematic given the shortened time that parolees have been given to find compliant housing or face arrest and incarceration.  This housing restriction should be declared unconstitutionally vague, as it does not describe, with sufficient clarity, what a parolee must do in order to be in compliance with the statute. (See *Kolender*, 461 U.S. at 361.)

45

## VII.   PETITIONERS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES IS NOT REQUIRED SINCE REMEDIES ARE INADEQUATE AND FUTILE

Generally, prisoners must exhaust administrative remedies before filing a habeas corpus petition challenging prison conditions. (See *In re Muszalski* (1975) 52 Cal.App.3d 500, 503.) The exhaustion requirement does not apply where administrative remedies are futile or inadequate. (*In re Dexter* (1979) 25 Cal.3d 921, 925; *In re Reina* (1985) 171 Cal.App.3d 638, 642; *In re Serna* (1978) 76 Cal. App.3d 1010, 1014.)

Here, exhaustion is not required because the administrative remedies are futile and inadequate. The remedies are futile because Petitioners are challenging the legality of a statute that Respondent does not have the authority to alter or suspend. Moreover, Petitioner can be certain of the response to the appeal because it is based on an established policy.

The remedies are inadequate because Petitioners will be arrested next week. There is simply not enough time to process an administrative grievance. (Cal. Code Regs., Title 15 Section 3084.7, subdivision (g) (providing for review by CDCR final level).)

46

## CONCLUSION

For the foregoing reasons, the Court should temporarily and permanently enjoin Respondent from enforcing Section 3003.5, subdivision (b) as a parole condition.

Dated: October 4, 2007                    Respectfully submitted,

                                          PRISON LAW OFFICE
                                          ROSEN, BIEN & GALVAN, LLP

                                          By: _____
                                              Donald Specter
                                              Vibeke Norgaard Martin
                                              Rachel Farbiarz
                                              Ernest Galvan
                                              Nura Maznavi
                                              Loren Stewart
                                              Attorneys for Petitioners

47