1  MENNEMEIER, GLASSMAN & STROUD LLP
   KENNETH C. MENNEMEIER (SBN 113973)
2  ANDREW W. STROUD (SBN 126475)
   KELCIE M. GOSLING (SBN 142225)
3  STEPHEN LAU (SBN 221051)
   980 9th Street, Suite 1700
4  Sacramento, CA 95814
   Telephone: (916) 553-4000
5  Facsimile: (916) 553-4011

6  Attorneys for Defendant
   California Department of
7  Corrections and Rehabilitation

8              IN THE UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10 JOHN DOE,                          ) CASE NO: CV-07-05117 JF
                                      )
11          Plaintiff,                ) **CALIFORNIA DEPARTMENT OF**
                                      ) **CORRECTIONS AND**
12 v.                                 ) **REHABILITATION'S <u>AMENDED</u>**
                                      ) **OPPOSITION TO PLAINTIFF'S**
13 CALIFORNIA DEPARTMENT OF           ) **APPLICATION FOR A TEMPORARY**
   CORRECTIONS AND                    ) **RESTRAINING ORDER AND ORDER TO**
14 REHABILITATION, EDMUND G.          ) **SHOW CAUSE**
   BROWN JR., ATTORNEY GENERAL OF     )
15 CALIFORNIA,                        ) DATE: TBA
                                      ) TIME: TBA
16          Defendants.                ) COURTROOM: TBA
                                      )
17 _____    ) Honorable Jeremy Fogel

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

I.  INTRODUCTION ........................................................................ 1

II. FACTUAL BACKGROUND .......................................................... 2

    A.  The SPPCA ........................................................................ 2

    B.  Plaintiff's Criminal History ................................................ 3

    C.  Enforcement of the SPPCA Residency Restriction ............ 4

    D.  This Action ........................................................................ 4

    E.  The Habeas Petition in the California Supreme Court ....... 4

III. ARGUMENT ............................................................................... 5

    A.  The Court Should Abstain from Reaching Plaintiff's Constitutional Claims Because the Issue of the SPPCA's Retroactivity Is a Question of California Law that is Currently Being Considered by the California Supreme Court ...................................................... 5

    B.  Plaintiff Cannot Establish that He Is Entitled to Extraordinary Injunctive Relief ................................................................ 7

        1.  As to GPS Monitoring, Plaintiff Has Not Demonstrated Any Risk of Irreparable Harm ............................................................ 8

        2.  Plaintiff Cannot Demonstrate the Likelihood of Success on the Merits .. 8

            a.  The SPPCA Applies to Plaintiff ........................... 8

            b.  The SPPCA Does Not Violate the *Ex Post Facto* Clause ....... 9

                i.  In Adopting the SPPCA's Restrictions on Sex Offenders, the Voters Intended to Establish Nonpunitive Regulatory Measures to Protect the Public .................................................. 10

                ii. The SPPCA's Effect is Not Punitive ................ 11

            c.  The SPPCA Does Not Violate the Double Jeopardy Clause .... 13

IV. CONCLUSION .......................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arcamuzi v. Continental Air Lines, Inc.*,
  819 F.2d 935 (9th Cir. 1987) .................................................. 7

*Arizonans for Official English v. Arizona*,
  520 U.S. 43 (1997) ........................................................... 6, 7

*Caribbean Marine Serv. Co. v. Baldridge*,
  844 F.2d 668 (9th Cir. 1988) .................................................. 7

*Cedar Shake and Shingle Bureau v. City of Los Angeles*,
  997 F.2d 620 (9th Cir. 1993) .................................................. 6

*Coalition for Economic Equity v. Wilson*,
  122 F.3d 692 (9th Cir. 1997) .................................................. 6

*Doe v. Miller*,
  405 F.3d 700 (8th Cir. 2005) ........................................... 11, 12, 13

*Doe v. Schwarzenegger*,
  476 F. Supp. 2d 1178 (E.D. Cal. 2007) ........................................... 9

*Fireman's Fund Insurance Co. v. City of Lodi*,
  302 F.3d 928 (9th Cir. 2002) .................................................. 7

*Kansas v. Hendricks*,
  521 U.S. 346 (1997) ..................................................... 10, 12, 13

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963 ............................................................ 11

*Kollsman v. City of Los Angeles*,
  737 F.2d 830 (9th Cir. 1984) .................................................. 6

*Railroad Commission of Texas v. Pullman Co.*,
  312 U.S. 496 (1941) ..................................................... 1, 5, 6, 7

*Richardson v. Koshiba*,
  693 F.2d 911 (9th Cir. 1982) .................................................. 6

*Smith v. Doe*,
  538 U.S. 84 (2003) ..................................................... 9, 10, 11, 12

*Southwest Voters Registration Education Project v. Shelley*,
  344 F.3d 914 (9th Cir. 2003) .................................................. 7

*Weems v. Little Rock Police Department*,
  453 F.3d 1010 (8th Cir. 2006) ................................................. 11

# TABLE OF AUTHORITIES CONTINUED

## STATE CASES

*Davis v. City of Berkeley,*
  51 Cal. 3d 227 (1990) .................................................. 8

*Lee v. State of Alabama,*
  895 So. 2d 1038 (Ala. Crim. App. 2004) ................................ 11

## STATE CONSTITUTION, STATUTES, AND REGULATIONS

California Constitution
  Article 11, Section 10(a) ............................................. 2

Penal Code
  Section 220 ........................................................... 3
  Section 290 .......................................................... 12
  Section 3000.07(a) .................................................... 8
  Section 3003.5 ........................................................ 2
  Section 3003.5(b) ..................................................... 9
  Section 3004(b) ....................................................... 8

## MISCELLANEOUS

*California Practice Guide: Federal Civil Procedure Before Trial* .... 5, 7

Defendant California Department of Corrections and Rehabilitation ("CDCR"), identified incorrectly in plaintiff John Doe's ("plaintiff") moving papers as "The Department of Correction," hereby submits this amended response to the Order to Show Cause issued by this Court with respect to plaintiff's application for a temporary restraining order.[1]

# I.

# INTRODUCTION

On November 7, 2006, nearly six million California voters approved Proposition 83, thereby enacting "The Sexual Predator Punishment and Control Act: Jessica's Law" (the "SPPCA"). That statute contains several provisions designed to better protect communities from convicted sex offenders. One subjects certain prior offenders to lifetime GPS monitoring commencing upon their release on parole. Another prohibits certain prior offenders from living within 2,000 feet of a school or park where children gather. Plaintiff here seeks an order restraining CDCR from applying either provision to him. Plaintiff apparently contends that such application would be retroactive and would therefore violate the ex post facto and double jeopardy clauses of the federal constitution. The Court should deny plaintiff's application for several reasons.

First, the issue of whether the voters intended the SPPCA to apply retroactively to persons in plaintiff's circumstances presents a question of California law that is currently before the California Supreme Court on a petition for habeas corpus. That court's determination of the state law retroactivity issue could obviate the need to reach the federal constitutional issues also raised in that habeas petition as well as in this action. Accordingly, under well-established principles of *Pullman* abstention, the Court should stay these proceedings pending the state supreme court's determination of an important and unsettled issue of state statutory construction.

---

[1] CDCR files this amended opposition brief to correct several typographical errors contained in its opposition brief filed on October 10, 2007, and to advise the Court of recent developments in an action pending in the California Supreme Court involving issues similar to those raised here.

1        Second, even if the Court reaches the merits now, before the California Supreme Court rules, plaintiff cannot meet the requirements for a temporary restraining order or preliminary injunction. As to GPS monitoring, plaintiff has made no showing of immediate irreparable harm so as to justify extraordinary injunctive relief. By plaintiff's own account, he has been subject to GPS monitoring since January of this year – more than seven months before he filed his application for a temporary restraining order. This being so, plaintiff cannot demonstrate any exigency that would justify a mandatory injunction altering the status quo. As for the residency restriction, plaintiff cannot show any possibility of success. That restriction applies to persons who, like plaintiff, were released from incarceration on or after the SPPCA's effective date. The restriction is regulatory and non-punitive, as it is designed to reduce the frequency of contact between sex offenders and children, thereby reducing temptation and opportunity and risk of re-offense. Therefore, the residency restriction does not implicate the *Ex Post Facto* Clause or double jeopardy.

## II.

## FACTUAL BACKGROUND

### A.  The SPPCA

       On November 7, 2006, by an overwhelming majority, California voters adopted Proposition 83, known as "The Sexual Predator Punishment and Control Act: Jessica's Law" (the "SPPCA").[2] Pursuant to the California Constitution, the SPPCA went into effect on November 8, 2006. Cal. Const., art. 11, § 10(a).

       The SPPCA adopts measures designed to regulate certain convicted sex offenders upon their release from custody. First, the SPPCA provides that "persons for whom registration is required pursuant to Section 290 [of the Penal Code]" may not "reside within 2,000 feet of any public or private school, or park where children regularly gather." Penal Code § 3003.5 (Section 21 of the SPPCA). Second, the SPPCA provides that, upon release from incarceration, certain

---

[2]     The final result was 5,926,800 "yes" votes (70.5%) and 2,483,597 "no" votes (29.5%). *See* http://vote.ss.ca.gov/Returns/prop/00.htm (as of August 5, 2007).

"inmate[s]" "shall be monitored by a global positioning system for life." Penal Code § 3004(b) (Section 22 of the SPPCA). Plaintiff apparently challenges both provisions.

**B.   Plaintiff's Criminal History**

Plaintiff has eight felony convictions and twenty-three misdemeanor convictions.

In 1980, plaintiff was charged with abducting an 18-year-old girl and holding an ice-pick to her throat while raping her. Based on this crime, he was convicted on four felony counts: Penal Code section 220 (assault with attempt to commit rape), Penal Code section 207 (kidnaping), Penal Code section 236/237 (false imprisonment effected by violence), and Penal Code section 261(rape accomplished by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury). He was sentenced to four years in state prison. Not long after his release, in 1985, plaintiff was convicted on one count under Penal Code section 459, felony burglary, and sentenced to two years in prison.

Because of plaintiff's rape conviction, he was subject to Penal Code section 290. That statute requires certain sex offenders to register their current addresses with law enforcement authorities. Plaintiff, however, repeatedly failed to advise law enforcement of his whereabouts. In 1994 he was convicted on a misdemeanor count of violating Penal Code section 290(g)(2), and sentenced to serve time in the county jail. That sentence was suspended and he was placed on three years' probation. In 2000, he was again convicted on a felony count of violating Penal Code section 290(g)(2) and sentenced to a year in the county jail; again, his sentence was suspended and he was given three years' probation. Yet again, in October 2002, plaintiff was convicted of a felony count of violating section 290(g)(2), sentenced to a year in county jail, and placed on probation for three years.

In 2005, while plaintiff was still on probation for failing to register as a sex offender, he was arrested and subsequently convicted of one felony violation of Health & Safety Code section 11377(a) (possession of methamphetamine) and one felony violation of Health & Safety Code section 11550 (using or being under the influence of methamphetamine). His

probation for his latest Penal Code section 290 conviction was revoked, and he was sentenced to thirty-two months in state prison.[3]

Plaintiff was released on parole on January 11, 2007. According to plaintiff, he was placed on GPS monitoring two weeks after his release, and he is currently wearing a GPS monitoring device.

### C.  Enforcement of the SPPCA Residency Restriction

On November 8, 2006, while plaintiff was incarcerated, the SPPCA took effect. CDCR is presently implementing a plan to enforce the SPPCA's residency restriction against affected parolees who, like plaintiff, were released from prison on or after the SPPCA's effective date. On August 23, 2007, CDCR gave plaintiff written notice that he is covered by the SPPCA's residency restriction, that his present residence is within 2,000 feet of a school or park where children gather, and that he must therefore move by October 11, 2007.

### D.  This Action

On September 17, 2007, plaintiff filed a document entitled "Temporary Restraining Order Order to Show Cause Why Relief Should Not Be Granted," naming as defendants CDCR and the California Attorney General. On September 19, 2007, the Court ruled that plaintiff had not made "a sufficient factual showing to warrant entry of a temporary restraining order at this juncture." Order to Show Cause, E-filed 9/19/07 ("OSC") at 1:23-25. However, construing plaintiff's pleadings liberally in light of his *pro se* status, the Court stated that, with respect to the residency restriction, "it appears that Plaintiff may be attempting to allege that the SPPCA is being given impermissible retroactive effect as to him." *Id.* at 1:26-2:1.

### E.  The Habeas Petition in the California Supreme Court

On or about October 4, 2007, four parolees filed a petition for habeas corpus in the California Supreme Court. *See* Request for Judicial Notice ("RJN"), Exh. A. Petitioners

---

[3] In addition to the convictions described above, plaintiff has twenty-two misdemeanor convictions for various offenses, such as using or being under the influence of a controlled substance, vandalism, disturbing the peace, theft, battery, public intoxication, driving under the influence, and driving with a revoked or suspended license.

seek an injunction barring CDCR from enforcing the SPPCA's residency restriction as to them. Petitioners claim that, because they committed their sex crimes before the SPPCA's effective date, applying the residency restriction to them would be "an impermissible retroactive application of a statute that is silent as to retroactivity." Claiming that they would be subject to arrest unless the court takes immediate action, petitioners requested that the court grant the requested injunctive relief by October 10, 2007. Petitioners also requested an immediate stay of enforcement of the SPPCA's residency restriction as to them, which the court granted on October 10, 2007.

## III.

## ARGUMENT

**A.    The Court Should Abstain from Reaching Plaintiff's Constitutional Claims Because the Issue of the SPPCA's Retroactivity Is a Question of California Law that Is Currently Being Considered by the California Supreme Court.**

As this Court has already noted, the central issue raised by plaintiff's pleading is whether "the SPPCA is being given impermissible retroactive effect as to him." OSC at 2:1. And, as noted above, this identical issue of state law statutory construction is currently before the California Supreme Court. Accordingly, this Court need not, and should not, reach this issue, or plaintiff's constitutional claims, until California's highest court rules.

When constitutional issues arise only if state law is interpreted in a particular way and state courts have not yet interpreted the law in question, federal courts should abstain in order to permit the state courts to interpret the state law. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941). *See also* William W Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:1309 (The Rutter Group 2006) (hereinafter "*Federal Civil Procedure Before Trial*") (describing the "*Pullman* doctrine"). Application of the *Pullman* doctrine avoids premature adjudication of constitutional issues. The criteria for application of the *Pullman* abstention doctrine are: (1) a complaint involving sensitive areas of social policy best left to the States to address, (2) a federal constitutional issue that could be mooted or narrowed by a state court ruling on state law issues, and (3) uncertainty as to the resolution of

potentially determinative state law issues. *Cedar Shake and Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993) (holding that district court erred in failing to abstain).

Those criteria are met here. First, plaintiff's pleading raises sensitive issues of state social policy. It is hard to imagine a more sensitive policy issue than the protection of society from convicted sex offenders who present a risk of recidivism. Second, plaintiff raises constitutional issues that could be mooted by a state court ruling on state law issues. If Proposition 83 does not apply to plaintiff, there is no occasion to reach the constitutional issues that he presents. Finally, because Proposition 83 is new, there is no way to know how the California Supreme Court will ultimately resolve the interpretative issues that arise. Since all three criteria are met, the Court should invoke the *Pullman* doctrine. *See Cedar Shake and Shingle Bureau*, 997 F.2d at 626 ("the district court abused its discretion in failing to abstain"); *Kollsman v. City of Los Angeles*, 737 F.2d 830, 837 (9th Cir. 1984) (vacating judgment "[b]ecause the district court should have abstained"); *Richardson v. Koshiba*, 693 F.2d 911, 915-917 (9th Cir. 1982) (invoking *Pullman* doctrine sua sponte).

The circumstances of this case call to mind recent Supreme Court admonitions. The Court recently reminded subordinate federal courts not to undertake "to review the constitutionality of a state law without first asking: 'Is this conflict really necessary?'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997). "When anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of that core question." *Id.* at 75. As a general rule, federal courts "ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts." *Id.* "Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Id.* at 79.

The Ninth Circuit acknowledged that admonition in *Coalition for Economic Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir. 1997). That case involved a challenge to California's Proposition 209 (addressing affirmative action), adopted by initiative in 1996. On

1  the day after the election, plaintiffs filed an action seeking a declaration that Proposition 209 was
2  unconstitutional and an injunction enjoining the State from enforcing it. *Id.* at 697. The district
3  court promptly issued a preliminary injunction, from which an appeal was taken. In that appeal,
4  before reaching the merits, the Ninth Circuit "pause[d] to consider whether this case even
5  belongs in federal court." *Id.* at 699. The court noted the Supreme Court's admonitions in
6  *Arizonans for Official English*, adding: "For this federal tribunal to tell the people of California
7  that their one-day-old, never-applied-law violates the Constitution, we must have more than a
8  vague inkling of what the law actually does." *Id.* at 699-700.
9         Those admonitions apply here. Plaintiff's exact argument – that the SPPCA may
10 not be retroactively applied to him – is currently before the California Supreme Court. Under
11 these circumstances, the Court should invoke the *Pullman* abstention doctrine and stay
12 proceedings while this unsettled issue of state law statutory construction is litigated before
13 California's highest court. *See Federal Civil Procedure Before Trial, supra,* ¶ 2:1312 (citing
14 *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) (addressing proper
15 disposition of case upon application of *Pullman* doctrine)).

16 **B.     Plaintiff Cannot Establish that He Is Entitled to Extraordinary Injunctive Relief**

17        Even if the Court declines to abstain under *Pullman*, plaintiff's application for
18 injunctive relief must be denied. To obtain a temporary restraining order, plaintiff must show
19 either (1) a combination of probable success on the merits and the possibility of irreparable
20 injury, or (2) that serious questions are raised and the balance of hardships tips sharply in his
21 favor. *Southwest Voters Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir.
22 2003). These standards are not separate tests, but are the outer reaches of a continuum. But, as
23 an irreducible minimum, plaintiff must demonstrate some risk of irreparable harm. *See Federal*
24 *Civil Procedure Before Trial*, ¶ 13:56.1 ("[N]o matter how strong the probability of success on
25 the merits, some irreparable injury must be threatened; otherwise, injunctive relief will be
26 denied."). And, no matter how strong the showing of harm, plaintiff must also demonstrate "a
27 fair chance of success on the merits." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937
28

(9th Cir. 1987) ("As an 'irreducible minimum,' the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation.").

1. **As to GPS Monitoring, Plaintiff Has Not Demonstrated Any Risk of Irreparable Harm.**

Plaintiff apparently wants the Court to order defendants to remove the GPS monitoring device from his ankle. He thus asks the Court to issue *mandatory* injunctive relief to *alter* the status quo. The Court should decline this request.

Plaintiff admits that he was fitted with a GPS monitoring device in January 2007, two weeks after he was most recently released on parole. Thus, although he has been subjected to GPS monitoring for over seven months, he waited until September 17, 2007 to file this action. This delay belies any claim that GPS monitoring imposes irreparable harm.

2. **Plaintiff Cannot Demonstrate the Likelihood of Success on the Merits.**

   a. **The SPPCA Applies to Plaintiff.**

Plaintiff apparently contends that the SPPCA does not apply to him. He argues that the statute applies only prospectively, and therefore does not reach those who committed their offense before the SPPCA's adoption. This argument fails.

The reach of a newly enacted statute is a matter of legislative intent. To determine the intent of a voter-approved initiative, the plain meaning of the law is typically instructive. *Davis v. City of Berkeley*, 51 Cal. 3d 227, 234 (1990).

As for GPS monitoring, one SPPCA provision states: "Every *inmate* who has been convicted [of any felony sexual offense that requires registration] and who is committed to prison and released on parole . . . shall be monitored by a global positioning system for the term of his or her parole." Penal Code § 3000.07(a) (italics added). Another SPPCA section provides that every such "*inmate* . . . who is . . . released on parole . . . shall be monitored by a global positioning system for life." Penal Code § 3004(b) (italics added). These provisions call into question the meaning of the term "inmate." Two potential meanings come into play. Plaintiff's argument suggests that the term means only persons who committed their offense after the SPPCA's effective date. But that argument disregards the term "inmate," which focuses on the

fact of incarceration. Thus, a more reasonable interpretation of section 3004(b)'s use of the term "inmate" is that it reflects an intent to reach persons who were incarcerated when, or after, the SPPCA became effective. Plaintiff is such a person.

As for the SPPCA's residency restriction, it provides that "it is unlawful for any *person* for whom registration is required . . . to reside within 2000 feet of any [school or park]." Penal Code § 3003.5(b) (italics added). Plaintiff is a "person" for whom registration is required. Thus, he is covered by the plain wording of section 3003.5(b).

Plaintiff cites *Doe v. Schwarzenegger*, 476 F. Supp. 2d 1178 (E.D. Cal. 2007), in arguing that the SPPCA does not apply to him. That case was distinguishable because it involved plaintiffs who had been released from incarceration *before* the SPPCA took effect. Based on that fact, the state took the position that the SPPCA did not reach those plaintiffs, and the district court agreed.

Plaintiff argues that he was *first* released from incarceration before the SPPCA took effect. That fact does not help him, because he subsequently violated parole and was incarcerated when the SPPCA took effect on November 8, 2007. Thus, the SPPCA applies to him.

        **b.**    **The SPPCA Does Not Violate the *Ex Post Facto* Clause.**

Plaintiff appears to argue that application of the SPPCA to him offends the *Ex Post Facto* Clause. The framework for the *ex post facto* inquiry is "well established." *Smith v. Doe*, 538 U.S. 84, 92 (2003). If the lawmaking body intended to impose punishment, that ends the inquiry, as the *Ex Post Facto* Clause bars any retrospective punishment. If, however, the legislature intended to enact a non-punitive regulatory scheme, the Court must examine whether the statutory scheme is so punitive in effect "as to negate the State's intention to deem it civil." *Id.* at 92. Here, the portions of the SPPCA at issue were not punitive in purpose or effect, and plaintiff's *ex post facto* claim fails.

///

///

///

i. **In Adopting the SPPCA's Restrictions on Sex Offenders, the Voters Intended to Establish Nonpunitive Regulatory Measures to Protect the Public.**

The intent underlying the adoption of both the SPPCA's residency restriction and its GPS monitoring provisions was to create a non-punitive regulatory scheme to better protect the public from sexual predators.

Crime studies have shown that persons who commit sex offenses have a high rate of recidivism. *See, e.g.,* U.S. Dept. of Justice, Bureau of Justice Statistics, Sex Offenses and Offenders 27 (1997); U.S. Dept. of Justice, Bureau of Justice Statistics, Recidivism of Prisoners Released in 1983, p. 6 (1997).[4] In response, lawmakers have adopted various measures designed to better protect the public from such recidivist behavior. For example, many states have adopted statutes that require convicted sex offenders to register with law enforcement authorities. Some states release information about registered sex offenders to the public. Several states have established procedures for the civil commitment of persons deemed likely to engage in predatory acts of sexual violence. The Supreme Court has held that such measures reflect legislative efforts to create non-punitive regulatory schemes to protect the public, and has upheld these measures against *Ex Post Facto* Clause challenges. *Smith v. Doe*, 538 U.S. 84 (2003) (rejecting *ex post facto* challenge to Alaska statute that required convicted sex offenders to register with law enforcement authorities and authorized the State to publish the offender's name, address, and photograph); *Kansas v. Hendricks*, 521 U.S. 346 (1997) (rejecting *ex post facto* challenge to Kansas statute that established procedure for the civil commitment of persons deemed likely to engage in predatory acts of sexual violence).

The SPPCA is yet another example of lawmakers' continuing efforts to adopt measures designed to enhance public safety. In fact, in the SPPCA's "Findings and Declarations," the voters declared that "[i]t is the intent of the People in enacting this measure to

---

[4] The Supreme Court cited these studies in observing that "the risk of recidivism posed by sex offenders is frightening and high," and "when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *Smith*, 538 U.S. at 103.

help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses," and "Californians must also take additional steps to monitor sex offenders, to protect the public from them." Proposition 83, §§ 2(f), 2(h). *See*'s RJN, Exh. B.

The Eighth Circuit recently upheld Iowa's 2,000 foot residency restriction against an *ex post facto* challenge. *Doe v. Miller*, 405 F.3d 700, 718-23 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 757 (2005). In doing so, the Eighth Circuit affirmed the district court's finding that the restriction was part of a "non-punitive regulatory scheme to protect the public." *Id.* at 718. *See also Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006) (rejecting *ex post facto* challenge to Arkansas' 2,000 foot residency restriction), *cert. denied*, 127 S. Ct. 2128 (April 30, 2007); *Lee v. State of Alabama*, 895 So. 2d 1038 (Ala. Crim. App. 2004) (rejecting *ex post facto* challenge to 2,000 foot residency restriction).

Similarly, in a recent *Ex Post Facto* Clause case, the Supreme Court stated: "[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment." *Smith*, 538 U.S. at 93-94. *See also Miller*, 405 F.3d at 718 (quoting same language from *Smith* in rejecting *ex post facto* challenge to Iowa's residency restriction). That language applies here. With the SPPCA's residency restriction and GPS monitoring requirement, California's voters adopted legislation designed to better protect their communities against recidivist conduct by sex offenders. In doing so, they simply exercised their regulatory powers, and were not adding punishment.

### ii. The SPPCA's Effect is Not Punitive.

Although the voters had a non-punitive intent in adopting the SPPCA's residency restriction and GPS monitoring requirement, the *Ex Post Facto* Clause would still apply if the statute has a punitive effect. *Smith*, 538 U.S. at 92. In evaluating whether a statute has a punitive effect, courts use the several factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), as "guideposts." *Smith*, 538 U.S. at 97. *See also Miller*, 405 F.3d 700, 719 (2005) (applying five of the factors to Iowa's 2,000 foot residency restriction).

One factor is whether the restrictions at issue have historically been used as punishment. *Id.* Plaintiff cites no examples of residency restrictions being used as punishment, and CDCR is aware of none. The residency restriction affects only where an offender may live. It does not expel offenders from their communities or prohibit them from accessing areas near schools or parks for employment, commercial transactions, or any other legitimate purpose. *See Miller*, 405 F.3d at 719. As for GPS monitoring, the use of GPS devices to monitor a person's whereabouts is a relatively new phenomenon. This precludes any showing that GPS monitoring has historically been a form of punishment.

Another factor is whether the restriction "imposes an affirmative disability or restraint." *Smith*, 538 U.S. at 97. A residency restriction is far less disabling than the civil commitment scheme upheld by the Supreme Court in *Hendricks*. *See Miller*, 405 F.3d at 721 (making same observation). GPS monitoring does not disable or restrain; to the contrary, it allows freedom of movement.

The most important factor is whether the restriction "has a rational connection to a nonpunitive purpose," and whether the restriction is "excessive" with respect to that purpose. *Smith*, 538 U.S. at 97, 102-03. Here, the SPPCA serves the legitimate nonpunitive purpose of enhancing public safety by distancing offenders from places where potential victims (e.g., minors unaccompanied by adults) gather and reducing the frequency of contact between sex offenders and children. This reduces opportunity and temptation, which can lower the risk of recidivism. *See Miller*, 405 F.3d at 722 (citing expert testimony for this point). For these reasons, the Eighth Circuit found Iowa's residency restriction reasonably related to its legitimate, nonpunitive purpose. *Miller*, 405 F.3d at 721-23.

Plaintiff suggests that the SPPCA's restrictions are unreasonable because they apply to a large number of sex offenders without any individualized determination of dangerousness. This argument fails because no particularized risk assessment is required. "[T]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Miller*, 405 F.3d at 721 (quoting *Smith v. Doe*, 538 U.S. at 103).

      c.    **The SPPCA Does Not Violate the Double Jeopardy Clause.**

Plaintiff also apparently contends that applying the SPPCA to him violates the Double Jeopardy Clause. But, as explained above, the SPPCA'S residency and GPS monitoring provisions are not punitive, but are instead part of "non-punitive regulatory scheme to protect the public." *Doe v. Miller*, 405 F.3d 700, 718-23 (8th Cir. 2005). Because the Double Jeopardy Clause prohibits the State from "punishing twice, or attempting a second time to punish criminally, for the same offense," plaintiff's double jeopardy claim fails along with his *ex post facto* claim. *See Kansas v. Hendricks*, 521 U.S. 346, 369 (1997) (because State's civil commitment statute was "not tantamount to punishment," sex offender's involuntary confinement did not violate double jeopardy clause "even though that confinement may follow a prison term").

## IV.

## CONCLUSION

The CDCR respectfully requests that the Court deny plaintiff's application for a TRO.

Dated: October 12, 2007

MENNEMEIER, GLASSMAN & STROUD LLP
KENNETH C. MENNEMEIER
ANDREW W. STROUD
KELCIE M. GOSLING
STEPHEN LAU

By: *[signature]* Kenneth C. Mennemeier/KMG
Kenneth C. Mennemeier, Attorneys for the
California Department of Corrections and
Rehabilitation

Case Name: *Doe v. California Department of Corrections and Rehabilitation*
Case No: U.S. District Court, Northern District of California, CV 07-05117 JF

# PROOF OF SERVICE

I declare as follows:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento, California 95814. On October 12, 2007, I served the within documents:

**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S AMENDED OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

☐ by transmitting via facsimile from (916) 553-4011 the above listed document(s) without error to the fax number(s) set forth below on this date before 5:00 p.m. A copy of the transmittal/confirmation sheet is attached.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepared, in the United States mail at Sacramento, California addressed as set forth below.

☒ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and delivering to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

EDWARD E. VILLEGAS                    *Plaintiff in Pro Per*
1207 LANCELOT LN.
SAN JOSE, CA 95127
Telephone: 408.729.4763
Cell: 408.401.5994

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepared in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed on October 12, 2007, at Sacramento, California.

*Angela Knight* (signature)
Angela Knight